IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-01213-PAB

RANDY HULME,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Randy Hulme on May 17, 2017. Plaintiff seeks review of the final decision of defendant Andrew M. Saul (the "Commissioner")[1] partially denying his claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

## I. BACKGROUND

On January 2, 2015, plaintiff applied for supplemental security income under Title XVI of the Act. R. at 10. Plaintiff alleged that he was disabled as of June 7, 2013.

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit. *See* Fed. R. Civ. P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

*Id*. After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on December 9, 2016. *Id.* On December 21, 2016, the ALJ issued a decision partially granting and partially denying plaintiff's claim. R. at 6. The ALJ found that plaintiff had the following severe impairments: supraspinatus and infraspinatus tendinosis with a large full-thickness tear, bicep tendon tear with retraction of the right shoulder, and post arthroscopy with rotator cuff repair of the right shoulder. R. at 12. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 14, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b). He cannot operate hand controls or reach overhead with the right, dominant upper extremity. He can frequently handle, finger, and feel with his right upper extremity. He cannot climb ladders or scaffolds or work at unprotected heights or with dangerous unprotected machinery. He can occasionally kneel and crawl.

R. at 14. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that, prior to August 15, 2016, plaintiff was capable of performing jobs that existed in significant numbers in the national economy. R. at 18. However, the ALJ concluded that plaintiff became disabled on August 15, 2016, when plaintiff's age category changed to "advanced age." R. at 18-19.

On March 27, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's partial denial of his claim. R. at 1. Given the Appeals Council's denial, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial

3

gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age,

education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff claims that the ALJ erred by not giving proper weight to the opinions of plaintiff's treating physician, Jonathan Bravman, M.D., about plaintiff's limitations prior to August 15, 2016.  Docket No. 14 at 6.

The Tenth Circuit's "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry.  In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be

entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted). Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal. *Watkins*, 350 F.3d at 1300-01.

The record indicates that Dr. Bravman began treating plaintiff on November 20, 2015. R. at 315. He saw plaintiff both before and after performing plaintiff's surgery on April 4, 2016, for a total of six visits. R. at 315-76. On September 14, 2016, Dr. Bravman wrote a letter on plaintiff's behalf. R. at 423. He noted that he had been treating plaintiff since approximately 2015. *Id*. Dr. Bravman noted that "[i]t is difficult for [plaintiff] to lift his arm to shoulder level and he cannot carry any weight greater than

[five] pounds." *Id*. On October 12, 2016, Dr. Bravman wrote a second letter on plaintiff's behalf. R. at 424. In the second letter, Dr. Bravman stated that, prior to plaintiff's surgery, "his pain was so severe in his shoulder and arm that he would have been off task at least [thirty percent] of the time for any job that he would have performed." *Id*. The ALJ gave "greater weight" to Dr. Bravman's first letter, and "minimal weight" to the second. R. at 17-18. As support for this determination, the ALJ explained:

> [Plaintiff's] limited medical treatment, possible work activity, limited engagement in physical therapy, and reliance on over-the-counter medication indicates that any limitation corresponding to Dr. Bravman's October 2016 opinion was brief in duration and did not last the entire period of alleged disability.

*Id*.

Plaintiff argues that the ALJ did not give good reasons for assigning minimal weight to Dr. Bravman's second letter because the ALJ "seems to think that [the two] letters contradict each other" and that the ALJ erred in reading the letters of support. Docket No. 14 at 6, 10. Defendant responds that the ALJ's assessment was supported by substantial evidence because "the ALJ discussed medical evidence in the record that contradicted Dr. Bravman's opinion." Docket No. 16 at 6.

The Court agrees with defendant. Dr. Bravman's second letter indicated that plaintiff could not use his right arm at all before surgery. *See* R. at 424. The ALJ identified evidence in the record that was inconsistent with that conclusion. For example, the ALJ pointed to evidence that plaintiff went eleven months without seeking medical treatment in 2015, despite having Medicaid. *See* R. at 241, 314. The ALJ noted that plaintiff relied on over-the-counter medication immediately prior to surgery.

7

*See* R. at 336.  Further, the ALJ relied on the fact that plaintiff reported he was "currently working as a mechanic" in November 2015, which was inconsistent with Dr. Bravman's second letter.  *See* R. at 315.  Finally, the ALJ considered evidence that plaintiff had not engaged in physical therapy at all after his surgery.  *See* R. at 411.  Taken together, the ALJ concluded that Dr. Bravman's opinions that plaintiff was in severe pain and could not use his right arm at all prior to surgery were inconsistent with the record as a whole.  *See* R. at 17-18.  Although plaintiff argues that these opinions are consistent with plaintiff's diagnosis of a torn biceps, *see* Docket No. 14 at 7-8, the evidence in the record is that plaintiff was working as a mechanic ten months after the MRI diagnosing the torn biceps, indicating that the torn biceps did not preclude plaintiff's ability to work.  Given that the ALJ gave "sufficiently specific" reasons supported by substantial evidence in the record, the Court finds that the ALJ did not commit reversible error in giving Dr. Bravman's second letter minimal weight.  *See Langley*, 373 F.3d at 1119.

Plaintiff's argument that the ALJ mistakenly concluded that Dr. Bravman's letters contradict each other is without merit.  Nowhere in the ALJ's opinion does she indicate that her reason for assigning different weights to the two letters is that they contradict each other.  *See* R. at 17-18.  Instead, the ALJ's reason for giving minimal weight to the second letter is because the letter is inconsistent with the record as a whole.  *Id*.  To be sure, there is some evidence in the record that is consistent with Dr. Bravman's opinion that plaintiff was suffering from severe pain in his right shoulder and arm.  For example, the medical records prior to surgery show that plaintiff had been prescribed Percocet for pain, not solely over-the-counter medication.  *See* R. at 315 (November 20, 2015

record indicating a prescription for "oxycodone-acetaminophen (PERCOCET)" beginning June 18, 2012).  However, because the ALJ's conclusion is supported by substantial evidence in the record, the scope of review precludes the Court from independently reweighing Dr. Bravman's letters and coming to a different conclusion from the ALJ.  See Flaherty, 515 F.3d at 1070.

Because the ALJ provided legitimate reasons for rejecting one of Dr. Bravman's opinions, the Court will affirm.[3]

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled prior to August 15, 2016, is **AFFIRMED**.  It is further

**ORDERED** that this case is closed.

DATED May 31, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[3] Because the Court finds that the ALJ's assessment of Dr. Bravman's letters was supported by substantive evidence, the Court need not address plaintiff's related contention that the ALJ's error led her to incorrectly conclude that there were jobs existing in the national economy in significant numbers that the plaintiff could perform. See Docket No. 14 at 11-13.